J-A14008-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: T.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: A.B., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 3187 EDA 2022 |

Appeal from the Order Entered December 7, 2022
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s): CP-51-DP-0002247-2018

| | | |
|---|---|---|
| IN THE INTEREST OF: T.-G.L.E.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.B., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 3188 EDA 2022 |

Appeal from the Decree Entered December 7, 2022
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s): CP-51-AP-0000767-2021

BEFORE: PANELLA, P.J., SULLIVAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY PANELLA, P.J.:       **FILED SEPTEMBER 14, 2023**

A.B. ("Mother") appeals from the December 7, 2022 decree that involuntarily terminated her parental rights to her biological son, T.-G.L.E.B.,

---

[*] Former Justice specially assigned to the Superior Court.

also known as T.B. ("Child"), who was born in May 2015.[1] Mother has also appealed the December 7, 2022 order that changed Child's permanency goal to adoption. After careful review, we vacate both the termination decree and the goal change order, and remand with instructions.

The Philadelphia Department of Human Services ("DHS") first became involved in Child's life on October 2, 2018, when the agency received a report that "Mother inflicted a burning or scalding injury to Child." ***In the Interest of T.B.***, 220 A.3d 666, 246 EDA 2019 (Pa. Super. filed July 19, 2019) (unpublished memorandum at 1) ("***T.B. I***") (citation to record omitted). "Shortly thereafter, DHS obtained an order of protective custody and Child was removed from the home." ***Id***. (citation to record omitted). On October 9, 2018, DHS filed a dependency petition asserting that Child lacked proper care or control and was a victim of child abuse. ***Id***. at 2. On December 12, 2018, following a hearing, "the trial court entered an order finding that Child was a victim of child abuse and that Mother was the perpetrator." ***Id***. at 5. On appeal, this Court affirmed the finding of child abuse. ***See id***. at 11. On January 10, 2019, Child was adjudicated dependent and placed in foster care with a permanency goal of reunification. ***See In the Interest of T.B.***, 258

_____

[1] Child's birth certificate does not list a biological father. On December 7, 2022, the trial court also filed decrees involuntarily terminating the parental rights of Child's putative biological father along with any unknown father. No appeals have been filed from those decrees.

A.3d 494, 2266 EDA 2020 (Pa. Super. filed June 4, 2021) (unpublished memorandum at 2) ("***T.B. II***").

On July 11, 2019, DHS received a report that Child's half-brother, Z.E., had suffered a lacerated pancreas and fractured ribs while under Mother's care. ***See id.*** at 3. DHS investigated and concluded that child abuse was indicated as to Mother with respect to Z.E.'s injuries. ***See id.*** Consequently, Child's guardian *ad litem* ("GAL") filed a motion seeking a judicial determination that Mother had abused Z.E. pursuant to 42 Pa.C.S. § 6341(c.1). ***See id***. at 4. Ultimately, the trial court found, among others, that Z.E. had suffered child abuse at Mother's hands and that aggravated circumstances existed with respect to Child, therefore directing that no further efforts be made to reunify Child with Mother. ***See id***. at 7-8. After Mother appealed, this Court affirmed. ***See id***. at 28.

On December 21, 2021, DHS filed a petition seeking the involuntarily termination of Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). On that same day, DHS also filed a petition to change Child's permanency goal to adoption. The trial court appointed Teresa Eileen Kibelstis, Esquire ("the attorney-GAL"), to represent both Child's legal and best interests. Thereafter, the proceedings were continued several times.

On October 4, 2022, the attorney-GAL filed a motion averring that there was "a conflict between the child's expressed wishes and his best interests" in the termination-of-parental-rights ("TPR") proceedings and asserting that

appointment of counsel to represent Child's legal interests pursuant to 23 Pa.C.S. § 2313(a) was necessary.[2] Motion for Appointment of TPR Counsel, 10/4/22, at ¶ 11. Specifically, the attorney-GAL reported that Child had expressed his desire to live with Mother during a foster home visit on September 29, 2022. *See id*. at ¶ 10. On November 3, 2022, the trial court filed an order directing that legal interest counsel be appointed to represent Child. *See* Order, 11/3/22, at 1. The next day, an appointment letter to that effect was transmitted to John Capaldi, Esquire ("TPR counsel").

On November 8, 2022, a consolidated termination and goal change hearing began, at which point Child was seven years old. At this proceeding, DHS began its presentation of evidence by adducing the testimony of case manager supervisor Cheryl Wellington. *See* N.T., 11/8/22, at 6-46. Immediately after the conclusion of Ms. Wellington's testimony, the trial court called upon TPR counsel to make a "report" concerning Child:

THE COURT:        [TPR counsel] –

[TPR COUNSEL]: Yes, Your Honor.

THE COURT:        -- are you prepared to make a report?

[TPR COUNSEL]: Your Honor, I was appointed Friday afternoon. I've spoken with the workers here, and I'm planning to go out to see the child this week. But I just [got] this case Friday afternoon.

---

[2] Both the petition for appointment of TPR counsel and the subsequent order granting the same appear to have been misfiled at the dependency docket, as opposed to the adoption docket. *See* Motion for Appointment of TPR Counsel, 10/4/22, at 1 (indicating that the filing was submitted at Docket No. CP-51-DP-0002247-2018); *see also* Order, 11/3/22, at 1 (same).

THE COURT: Okay

(Pause.)

THE COURT: All right. Brief recess, please. Recess to the call of the crier.

. . . .

(Proceedings recessed at 2:55:49 p.m.)

(Proceedings recalled at 3:17:11 p.m.)

THE COURT: We'll have to do it – because I have to bring it back for [TPR counsel] to give his report, so we'll – we'll just have to reschedule it, and I'll plan for that testimony to come in.

*Id*. at 47. The trial court proceeded with the hearing.[3] DHS also presented testimony from a psychologist about Mother's parental fitness, *see id*. at 48-65, and Mother presented similar testimony from her therapist, *see id*. at 67-84. At the conclusion of this testimony, the trial court averred: "We'll have to come back to take [TPR counsel's] report. We'll come back and we'll hear Mother's testimony at that time." *Id*. at 85.

The hearing reconvened on December 7, 2022, wherein Mother testified. Thereafter, the trial court called upon TPR counsel to report on Child's

---

[3] At the conclusion of November 8, 2022 hearing, the trial court entered an ordered that purported to bifurcate the proceedings. **See** Continuance Order, 11/8/22, at 1 ("THE COURT FURTHER ORDERS: Case is bifurcated. Petitions held in abeyance."). Beyond the mere entry of this order, however, we discern no effort on the part of the trial court to actually bifurcate these proceedings. To the contrary, our review confirms that the hearings and the trial court's on-the-record reasoning were consolidated and collective with respect to the dual issues of termination and goal change.

preferences. *See id*. at 33. TPR counsel confirmed that he had met with his client on November 30, 2022. *See id*. at 34. However, TPR counsel was unable to report on Child's preferences. *See id*. at 34-35 ("I had a chance to discuss with him about living [in his foster home] and being adopted and wanting to stay there. I'm not sure he would – he can completely appreciate adoption, but I did talk to him about staying there until he's an adult.").

At the close of the hearing, the trial court entered a decree involuntarily terminating Mother's parental rights to Child. The trial court also entered an order changing Child's permanency goal to adoption. That same day, Mother filed separate, timely notices of appeal with respect to both determinations, along with concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). On January 17, 2023, the Court of Common Pleas of Philadelphia County submitted a letter to this Court indicating that the trial court had subsequently retired from the bench and, consequently, no Rule 1925(a)(2)(ii) opinions would be forthcoming. This Court has consolidated these cases for disposition pursuant to Pa.R.A.P. 513.

On appeal, Mother raises eight issues for our review. Seven of these issues concern the termination of her parental rights. The final issue challenges the change of Child's permanency goal to adoption.

However, we begin by addressing Mother's claim that TPR counsel could not and did not fulfill his obligations under the law, as this issue impacts the resolution of all of Mother's claims. Specifically, Mother asserts that the

belated appointment of TPR counsel rendered him "unable to meaningfully participate in the entirety of the hearing that took place on November 8, 2022, because he did not have the benefit of knowing what position his client wanted him to build a record to support." Mother's Brief at 42. Mother argues Child was therefore not afforded his right to counsel as required by Section 2313(a). *See id*.

We review involuntary termination of parental rights decrees through a deferential standard:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*Interest of H.H.N.*, 296 A.3d 1258, 1263 (Pa. Super. 2023). Accordingly, we defer to the trial court "so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion." *In re Adoption of S.P.*, 47 A.3d 817, 827 (Pa. 2012).

The appointment of counsel in the context of termination proceedings is governed by Pennsylvania's Adoption Act:

> **(a) Child.**—The court shall appoint counsel to represent the child in an involuntary termination proceeding when the proceeding is being contested by one or both of the parents. The court may appoint counsel or a guardian *ad litem* to represent any child who has not reached the age of 18 years and is subject to any other proceeding under this part whenever it is in the best interests of the child. No attorney or law firm shall represent both the child and the adopting parent or parents.

23 Pa.C.S. § 2313(a). Our Supreme Court has interpreted this statutory provision as requiring "'that the common pleas court appoint an attorney to represent the child's legal interest, *i.e.*, the child's preferred outcome.'" **In re Adoption of K.M.G.**, 240 A.3d 1218, 1223-24 (Pa. 2020) (quoting **In re T.S.**, 192 A.3d 1080, 1082 (Pa. 2018)).

In this context, "a child's legal interests are distinct from his best interests." **In re P.G.F.**, 247 A.3d 955, 964 (Pa. 2021). Representing a child's "legal interests denotes that an attorney is to express the child's wishes to the court regardless of whether the attorney agrees with the child's recommendation[.]" **Id**. Where, as here, "there exists a conflict between a child's best interests and the child's legal interests, these interests must be represented by separate individuals." **Id**.; **see also T.S.**, 192 A.3d at 1082. We also re-emphasize that the failure to appoint legal interest counsel to a child in contested termination proceedings is a "structural error" that is not subject to harmless error analysis. **T.S.**, 192 A.3d at 1092. Such an error is also non-waivable. **See id**. at 1093.

Accordingly, "trial courts are obligated by Section 2313(a) to appoint counsel to serve the critical role of a child's attorney, zealously advocating for

the legal interests of the child who otherwise would be denied a voice in the termination of parental rights proceedings." **K.M.G.**, 240 A.3d at 1233-34 (internal citation and quotation marks omitted). With respect to the critical role played by TPR counsel, "this Court has explicitly rejected the notion that [a] child's legal counsel fulfills his or her obligations under Section 2313(a) by discerning the child's preference and reporting it to the court." **H.H.N.**, 296 A.3d at 1264 (internal citations and quotation marks omitted). Indeed, such a

> narrow characterization of legal [interest] counsel's duties misstates [counsel's] obligations to his client pursuant to § 2313(a). While legal representation in this context necessarily involves talking to the child client and reporting the child's preferences to the court, it is in no way limited to those two actions. To the contrary, pursuant to [**L.B.M.**], the child's legal counsel [is] required to advocate on behalf of the child and provide zealous client-directed representation of the child's legal interests.

**Id**. at 1264-65 (footnote, citation, and brackets omitted); **see also P.G.F.**, 247 A.3d at 966 ("[A]n attorney acting as a child's legal counsel must, at a minimum, attempt to ascertain the child's preference and advocate on the child's behalf.").

Here, the record reveals that counsel failed to adequately determine Child's preference, let alone zealously advocate for it. As detailed above, the trial court did not appoint TPR counsel until a mere four days prior to the first termination hearing. Consequently, TPR counsel did not meet with his client before DHS presented the testimony of an expert witness. It was only after the November 8, 2022 hearing concluded that TPR counsel had any

opportunity to meet with Child, discuss the case, and attempt to ascertain Child's preferences and wishes. Nearly a month later, at a second hearing, counsel informed the trial court he had since been able to speak with Child. However, TPR counsel was unable to clearly state Child's preferences.

Normally, counsel's failures would militate for a new hearing to allow TPR counsel to zealously advocate for Child. However, it remains possible that the appointment of legal interest counsel for Child was ultimately unnecessary. Under Pennsylvania law, an attorney-GAL can serve the dual role of representing a child's best and legal interests in cases free from conflict between those two distinct concerns. *See T.S.*, 192 A.3d at 1088. At the conclusion of the December 7, 2022 hearing, the trial court speculated that Child may not have been entitled to the benefit of separate legal interest counsel pursuant to Section 2313(a) as a consequence of his young age. *See* N.T., 12/7/22, at 38-39 (indicating that the trial court believed that the seven-year-old child could potentially have trouble articulating his preferences). And that speculation was certainly reasonable based on TPR counsel's ambiguous statement to the court. However, neither the trial court nor TPR counsel stated that Child was unable to articulate his preferences. *See*, *e.g.*, *Interest of H.H.N.*, 296 A.3d at 1266 n.11 (indicating that the trial court has a duty to determine "whether a conflict exists between a child's best and legal interests." (citation omitted)); *see also In Re: P.G.F.*, 247 A.3d 955, 961 n.4 (Pa. 2021) (holding that "[t]he question of whether there exists a conflict

between legal counsel and a guardian *ad litem* is a mixed question of fact and law, subject to a review for an abuse of discretion."). Unfortunately, the record is simply not clear on this point, and we have no ability to assess child's capacity independently.

Under these circumstances, the prudent course is to remand this matter to the trial court to assess whether Child is able to articulate his preferences, and if he does, to determine what his preferences are. The only question, then, is whether we should retain or relinquish jurisdiction.

Here, upon remand, one of two outcomes is likely. First, the trial court could find that Child has the capacity to articulate his preferences, and he prefers that Mother's parental rights not be terminated. Under this scenario, the trial court would be required to hold a new hearing, where legal interest counsel could zealously advocate for Child's preferences.

In the alternative, the court could find that Child either lacks the capacity to articulate his preferences, or that Child has articulated no opposition to termination of Mother's rights. In that scenario, legal interest counsel for Child is not necessary as there is no conflict of interest and the trial court would be free to enter a new decree terminating Mother's rights. Mother would then have the option to file an appeal from that decree.

Given the possibility for divergent outcomes on remand, we must relinquish jurisdiction. Similarly, we need not address the remainder of Mother's arguments concerning involuntary termination of her parental rights,

as there exists a possibility that the ultimate result on remand is a new hearing.

Mother also claims TPR counsel was unable to zealously advocate Child's preferences with respect to the goal change. *See* Mother's Brief, at 40. Mother does not develop a separate argument regarding the goal change, and there is a major distinction between the analyses. Specifically, while Child has a statutory right to legal interest counsel in the event of a conflict of interest in a TPR hearing, Child was due legal interest counsel with respect to the goal change only if the trial court determined such appointment was in Child's best interests. *See* 23 Pa.C.S.A. § 2313(a) ("The court may appoint counsel or a guardian ad litem to represent any child who … is subject to any other proceeding under this part whenever it is in the best interests of the child.").

Given the state of the record, in conjunction with our decision to remand this matter for a determination of whether there was a conflict between Child's best interests and legal interests, we conclude it is prudent to direct the trial court to make explicit findings regarding whether Child was entitled to legal interest counsel for the purpose of the goal change.

We recognize that the original trial judge has since retired. As a result, our remand will go to a trial judge that does not have experience with the circumstances of this case or the benefit of having been present for the prior hearings. Accordingly, we grant the new trial judge all reasonable discretion in creating a process that allows the judge to answer the three initial questions

on remand: (1) whether Child can articulate his preferences; (2) whether those preferences conflict with his best interests; and (3) whether Child's best interests required the appointment of legal interest counsel for purposes of the goal change. Depending on how the trial court answers these three questions, it may decide that new goal change and termination hearings are necessary, or it may conclude that new hearings are unnecessary and enter a new decree and goal change order based on the record.

Decree vacated. Order vacated. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 9/14/2023*